Johnson, J.
delivered the opinion of the Court.
The grounds relied upon in support of the motion in this case, are, 1st, that notice of the protest for non-payment was not given in time, and was not superseded by the notice of the 26th and 27 th of May, that the bill would not be paid; 2d, that the evidence was not sufficient to authorize the conclusion that Coit Fraser acted in this business as the agents of the defendants, which, if true, it is admitted, would supersede the necessity of formal notice.
It is a legal presumption, that where one man draws a bill on another, that the drawee has funds of the drawer’s in his hands; the earliest possible notice, therefore, of the default of the drawee, is in mercantile transactions particularly necessary for the purpose of enabling the drawer to secure himself in case of failure; perhaps, then, in legal strictness, the notice of the 20th of June, of the non-payment of the bill in question, nine days after default had been made, when several mails had passed between the two places in the interim, did not amount to notice in due time. But taking all the circumstances together, it becomes rather a question of diligence, than the mere insulated question of notice; generally, notice constitutes an essential ingredient in a question of diligence, but not al *384 ways; the drawer or endorser may, by his owri act, render it unnecessary, as where he knows °* the insolvency of the drawee, and promises to pay — Chitty on Bilk, 163, 198. It is dispensed with, because a knowledge of the fact could not put the drawer in a better situation. The defendants’, in this case, knew that Hunter Ross had failed, and that the bill would not be paid, and although they have not in totidem verbis promised to pay, yet they refused to do so, on a ground, which it is not now pretended can avail them: not because they were desirous that the plaintiff should follow up Hunter Ross to the last moment with the bill, but because they thought it doubtful whether they were liable in any event: and although 1 am not prepared to say, that the notice that the bill would not be paid, after it had been accepted, would wholly dispense with notice of non-payment, yet in a doubtful case, when coupled with the subsequent notice, it ought to have its weight, and the defendants ought not to complain, because they by their admission in their letter of the 27th of May, knew what would be the fate of the bill.
This case, then, must depend on the question, whether Coit 8f Fraser were the agents of the plaintiff or defendants, in negociating this bill. The only circumstances which go to show that they acted as the agent of the plaintiff are, that they were in possession of the bill which was drawn in his favour, and his having written to *385 them at the time the bill was forwarded to them, for this letter was not in evidence, nor has its contents transpired. Opposed to these circumstances, and to prove that they acted as the agents of the defendants, are the following. 1st, thaj; the bill was sent them by the defendants, with instructions to endeavour to get it discounted at the bank. 2dly, in their letter of the 14th of May, they say they will see Coit, and request his attention, in procuring the amount, and to take charge of it for the plaintiff! 3d, that Coit 8r Fraser, received all the instructions which have come to view from them, and corresponded with them, altogether in relation to it. These facts furnish in my mind a strong presumption, that the defendants took upon themselves, in the first instance, the negociation of the bill, and that they constituted Coit Sr Fraser their agents, for that purpose; and I think it fair to presume, that the plaintiff’s letter accompanying the bill, was nothing more than instructions, how to dispose of the funds, when received; and this presumption is strengthened by the fact, that the plaintiff resided in the country, at a great distance from Charleston, and was probably a stranger to them. If, then, they are to be viewed in the character of the defendant’s agents, no notice of non-payment was necessary, as it is a well known rule, that notice to the agent, is notice to the principal, on the subject matter of the agency. But if the evidence of the fact, was even more doubtful than *386 I conceive it to be, I should still feel disposed to ' x support the verdict, as it was a question of fact, fairly left to the Jury, who are the proper judges,; they have determined it.
contraos’ Just'
I am, therefore, of opinion, that the motion for a new trial, ought not to be granted.
Bay, Nott, and Colcock, J. concurred.
Cheves, J.
The questions in this case, are.
1st. Whether the defendants received due notice of the non-payment of the bill ?
2d. If not, did any of the circumstances of the case, render this notice unnecessary ?
1st. It has been conceded by the counsel for the plaintiff; and with great propriety, that as a general question, the notice was in itself insufficient. There is no reason which can make notice necessary, between Savannah and Charleston, or Philadelphia and New-York, which -will not equally apply between Georgetown and Charleston. We have adopted the English doctrine, in its fullest extent, in relation to promissory notes, and foreign bills of exchange, among which we include, bills drawn in one state on another; and I do not know that we either have made, or ought to make, any distinction between those and inland bills. It was indirectly thrown out in the argument by the plaintiff’s counsel, that the plaintiff was a planter, a resident of the country, not engaged in mercantile pursuits, and *387 therefore ought not to be bound by the strictness of the rule.
This is, as a general question, a very serious one, if it be the subject of doubt. You may, perhaps, class contracts, and exempt certain kinds from the operation of the rule, though, I fear, it will be found very difficult. But, if planters deal in bills of exchange, I do not see how they can be separated from other classes of citizens. Already no distinction has been made between them and other persons, in bank transactions, and other mercantile acts, where they have claimed to be exonerated, for want of notice; and can they claim the advantage, without taking upon themselves the concomitant burden ? But it is unnecessary to say any thing upon this distinction, in this case; for this transaction was not between the plaintiff and the defendants, but between his agents, who were regular merchants, and the defendants ; and so it will be, in most instances like the present, if not in all. A planter will rarely collect bills of exchange himself. We are prepared then, unaffected by this embarrassing prejudice, to decide this case. If this is to be treated like other cases, notice was necessary, as a general principle. Was it then given in due time ? The bill was payable, on the 8 — 11th June, and the earliest notice the defendant received, was by the letter of Coit ¡y Fraser, dated 20th of the same month. We have adopted, as have almost all other commercial cities of the United States, *388 the rule of the English books, that the earliest. ® notice shall be given. The rule is perfectly just _ . . , . i i"' and convenient, requires nó relaxation, and, 1 l think, ought not to admit, of any. This rule required, that the defendants should have been notified by the next mail. Here the notice was not given until the departure of the fourth mail, after the bill was dishonoured. This notice, then, was clearly insufficient.
2d. Several circumstances are, however, relied upon to take this case out of the general rule. It is said Coit & Fraser were not the agents of the plaintiff Now the evidence of the plaintiff himself proves that he wrote a letter to Coil & Fraser, in which he enclosed this bill to be Collected by them on his account-These facts, indeed, appear from the letter of the defendants, which enclosed the plaintiff’s letter; but they are not disputed. They are expressly stated and admitted by the plaintiff But with this admission on his lips, keeping out of view his own letter to Coit & Fraser, he denies this agency, and avers that these gentieraen were the agents of the defendants. For what ? To collect a bill in which they had no property, which had been transferred by them to the plaintiff, the proceeds of which were to be received and held by Coit & Fraser on his account? But it is argued, that Coit & Fraser were the defendants’ general agents, and that their knowledge of the non-payment was equiva *389 lent to notice to defendants themselves. Now this view of the subject supposes they were the J A . . special agents of the plaintiff m relation to this bill, and what an incongruous result must follow: they are the agents to give notice to the defendants, and a new species of recipient at the same time of their own communications; were they to communicate it to the defendants, or was it to be hermetically sealed up in their bosoms ? If they were bound to do so, and did not, were they liable to the defendant? If they were, then on what principle ? Were they instructed, employed, or paid to make this communication? But there is no proof in the case that these gentlemen were general agents of the defendants: a single letter, I believe no more, speaking of a few matters of business, such as are very common in very limited agencies, was relied upon to establish a general agency; conceding all that is contended for on this point, they were at most mercantile correspondents and agents residing in a neighbouring commercial town, and if it had been proved that they were agents as general as the nature of their relations could possibly admit of, I know of no mercantile usage, of no decision or principle, which could malee knowledge in them notice to the defendants. To consider them as agents for this purpose, is to confound, in my apprehension, all accustomed notions on this subject. The object of notice is, that the drawer may take measures for his security in *390 relation to the accepter. Now it is a necessary presumption, that Coif Sr Fraser, having no di- . . ,. , . „ rections nor instructions,' knew nothing on the and they had no authority, if they did. The drawers might have been on the point of making a large shipment of produce to the accepter, which they might have detained. A thousand circumstances of this kind might have made it infinitely important to them to have known personally the fact. This matter is so well understood and established, that the law will not suffer the inquiry of less or more in considering the importance of notice. Neither the death, bankruptcy, or known insolvency of the accepter, will dispense with notice to the drawer. Chitty, 166.
But it is said, the defendants themselves were the plaintiff’s agents, so far that even his own knowledge of the transaction was to come 'through them. I think the evidence only establishes, that they were willing to serve the plaintiff by acts of kindness and civility. But admitting this fact, it only bound them to communicate to the plaintiff what they received, and only bound them otherwise to the extent of what was communicated to them. They were not made responsible for the omissions of other agents, and for what they did not know. It is said, the defendants did not originally mean to make this defence; that they intended to contend the bill was void for want of consideration. *391 It is a sufficient answer to this, that they now contend they are exonerated for want of notice, They are not incompatible, and one does not preclude the other. The first is untenable, the very reason that the last ought to be sustained — because it is a mercantile transaction. It is further said, that the defendants were informed before the bill became due, that the bill would not be paid, and, therefore, notice was unnecessary. There is certainly no legal foundation for this ground. Knowledge, even after the bill had been dishonoured, of that precise fact, would not dispense with notice, (Selwyn’s Nisi Prius, 355, and Tindall vs. Brown, T. Rep. 167.) But this very ground has been expressly overruled, (3 Campbell's Reports, 107, Baker vs. Birch.) It is argued, that these were questions of fact for the Jury; that they have decided them, and that the *verdict ought not to be disturbed. I have repeatedly said, I will not nicely scan evidence on which a Jury has passed: but, generally, it is as much the duty of the Court to grant a new trial where the verdict is clearly against the weight of evidence, as it is on a point of law; and this, I think, is, the case here. The Court should always grant a new trial where a fair trial of the merits of the case has not been had. Now, in this case, no trial can be fair in which the letter of the plaintiff to Coit & Fraser is suppressed, which contains, beyond question, evidence that would show unequivocally, whe~ *392 ^er §' Fraser were the agents of the plain* tiff or nót; and if there were not another cir- . . cumstance in the case which demanded a new trial, I should think it required by this alone, unless it were shown that the plaintiff could not produce this letter.
Gadsden and Richardson, for the motion.
King, contra.
I am of opinion a new trial ought to be granted.